UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re
CBI HOLDING COMPANY, INC., <u>et al.</u>,　　　　　　　　　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　94 B. 43819 (BRL)
　　　　　　　　Debtors,

------------------------------------------------------------X

BANKRUPTCY SERVICES, INC.,

　　　　　　　　Appellant-Cross Appellee,　　　　　　　　　01 CV 0131 (KMW)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　<u>OPINION & ORDER</u>
　　-against-

ERNST & YOUNG and ERNST & YOUNG, LLP,

　　　　　　　　Appellees-Cross Appellants.

------------------------------------------------------------X

　　　　In December 2009, the Court issued an opinion (the "Opinion") resolving Defendant Ernst & Young's ("E&Y") appeal of the decision by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above-captioned case. E&Y now moves for a rehearing of certain aspects of the Opinion, pursuant to Federal Rule of Bankruptcy Procedure 8015. E&Y also moves to stay the proceedings. For the reasons stated below, the Court (1) GRANTS in part and DENIES in part E&Y's motion for rehearing; and (2) DENIES the motion for a stay, without prejudice.

　　**I.　　Motion for Rehearing**

　　　　The standard for rehearing pursuant to Rule 8015 is strict. "The function of a petition for rehearing is not to permit the petitioner to reargue his case; to attempt to do so would be an abuse

1

of the privilege of making such a petition." Id. The sole purpose of rehearing is "to direct the court's attention to a material matter of law or fact which it has overlooked in deciding the case, and which, had it been given consideration, would probably have brought about a different result." J.P. Morgan Secs., Inc. v. The Spiegel Creditor Trust (In re Spiegel, Inc.), 06-CV-13477, 2007 WL 2609966, at *2 (S.D.N.Y. Aug. 22, 2007) (internal citation omitted). "Neither new evidence nor new arguments are considered valid bases for Rule 8015 relief." J.P. Morgan Secs., 2007 WL 2609966, at *2.

The Court assumes familiarity with the facts of this case, and with the Opinion and the Bankruptcy Court's decision. In its motion for rehearing, E&Y argues that the Court should: (1) find that the Bankruptcy Court clearly erred by excluding seven months of sales by Holsin, a company acquired by CBI Holding Company, Inc. ("CBI") in October 1993, when determining the sales multiplier the Bankruptcy Court used to calculate CBI's enterprise value (the "Holsin Argument"); (2) find that the Bankruptcy Court clearly erred by attributing the entire decline in CBI's value to E&Y's malpractice (the "Value Argument"); and (3) exclude the sales revenue from M. Brenner, a company that CBI acquired in April 1993, from the calculation of CBI's enterprise value, because its inclusion is not consistent with the purportedly "new" theory of causation adopted by this Court in the Opinion (the "Causation Argument"). The Court finds that the Holsin Argument has merit. The Value Argument is a new argument that cannot be raised on a motion for rehearing; it is, in any event, without merit. The Causation Argument is also without merit.

A. <u>The Holsin Argument</u>

E&Y asserts that in calculating CBI's enterprise value the Bankruptcy Court should have treated similarly the annual sales of two companies CBI acquired during 1993 and 1994, respectively.[1]

To understand E&Y's argument, it is necessary to recapitulate how the Bankruptcy Court calculated CBI's enterprise value. The Bankruptcy Court calculated CBI's enterprise value by multiplying the Bankruptcy Court's calculation of CBI's fiscal year 1993 net sales ("1993 sales") by 22%; its basis for using 22% as the multiplier was that FoxMeyer, a potential acquirer of CBI, used that multiplier in calculating CBI's enterprise value for its acquisition analysis. FoxMeyer, however, had chosen the multiplier of 22% based on a calculation of CBI's fiscal year 1994 net sales ("1994 sales") that included only <u>partial</u> annual sales of a company CBI acquired during the 1994 fiscal year, Holsin (FoxMeyer's calculation included only the five months of sales attributable to Holsin post-acquisition). The Bankruptcy Court's calculation of CBI's 1993 sales included twelve months of the 1993 sales by M. Brenner, a company CBI acquired in during the 1993 fiscal year (CBI acquired M. Brenner in April 1993, two weeks before the end of the 1993 fiscal year). The Bankruptcy Court's calculation of CBI's 1993 sales thus included M. Brenner's pre-acquisition sales and post-acquisition sales for 1993.

E&Y contends that the Bankruptcy Court clearly erred by including only part of Holsin's sales when calculating the sales multiplier, while at the same time including all of M. Brenner's sales when calculating CBI's 1993 sales. E&Y asserts that the Bankruptcy Court's inconsistent treatment of the M. Brenner and Holsin sales significantly increased CBI's enterprise value, and thus increased the damage award against E&Y.

---

[1] The Bankruptcy Court used CBI's enterprise value to calculate the damages CBI suffered as a result of E&Y's malpractice.

3

E&Y contends that if the Bankruptcy Court had used the same method for deriving enterprise value for each year, the damage award would have decreased by between $16 million to $19.8 million. The Bankruptcy Court could have accomplished this in one of two ways: (1) by not including in CBI's 1993 sales, the 1993 sales by M. Brenner prior to CBI's acquisition of the company; or (2) including all of Holsin's 1994 sales in calculating CBI's 1994 sales, when deriving the sales multiplier. E&Y contends that if the Bankruptcy Court had excluded from its calculation of CBI's 1993 sales M. Brenner's pre-acquisition sales, CBI's 1993 annual sales would have been $90 million lower (they would have dropped from $577,686,460 to $487,686,460); if the Bankruptcy Court had lowered CBI's 1993 annual sales in that way, the result would have been a $19.8 million decrease in CBI's enterprise value. If, in the alternative, the Bankruptcy Court had included in CBI's 1994 sales all of the 1994 sales attributable to Holsin, the multiplier would have decreased from 22% to 19%; the result would have been a reduction in E&Y's pre-interest damages of over $16 million.

This Court previously held that the Bankruptcy Court did not clearly err by including all of M. Brenner's sales in its calculation of CBI's 1993 sales, because there was evidence on the record to support the Bankruptcy Court's decision. Thus on rehearing, the Court will consider only E&Y's second argument, regarding the Holsin sales.

The Court notes that E&Y did not raise clearly its argument regarding the Holsin's sales in its briefing on appeal. E&Y's only reference to Holsin's sales occurs in a footnote on page 92 of a 100-page brief submitted in April 2001. There, E&Y states that the 22% sales multiplier "included . . . only the five months of Holsin's sales that occurred" after CBI acquired the company, but it does not argue that the Court should recalculate the multiplier based on inclusion of those sales. The Court could not have constructed the Holsin Argument on the basis of this

4

limited reference. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("A 'skeletal argument,' really nothing more than an assertion, does not preserve a claim . . . Especially not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs.") Nonetheless, because E&Y did allude to its argument in its appeal briefing, and because the argument is clearly meritorious, the Court will grant a rehearing.

On rehearing, the Court finds that the Bankruptcy Court, in calculating CBI's enterprise value, should have considered all of Holsin's 1994 sales. Accordingly, the Court orders the Bankruptcy Court (1) to recalculate the 22% sales multiplier by including all of Holsin's 1994 sales in the denominator; and (2) to recalculate CBI's enterprise value and the damages award against E&Y, on the basis of the recalculated sales multiplier.

B. The Value Argument

The Bankruptcy Court held that E&Y was liable for CBI's entire decline in value, because its malpractice caused CBI's bankruptcy. In its motion for rehearing, E&Y argues that the Bankruptcy Court erred in attributing CBI's entire decline in value to E&Y's malpractice, because CBI still had value at least three months after E&Y withdrew its 1993 audit report – as evidenced by FoxMeyer's offer to purchase CBI in June 1994.

E&Y did not raise this argument at all in its briefing on appeal. On appeal, E&Y argued only that it could not be held liable for any damages because its malpractice did not cause CBI's bankruptcy.[2] E&Y cannot raise an entirely new argument in a motion for a rehearing.

Even if the Court were to consider this new argument, the Court finds it to be without merit. The Court has already upheld the Bankruptcy Court's finding that E&Y's malpractice was the proximate cause of CBI's bankruptcy. The fact that it took CBI several months to

---

[2] E&Y itself admits this fact on page 6 of its brief in support of rehearing, where it states that "[i]n its original and supplemental briefing, E&Y argued that it could not be held liable for any damages because its conduct did not proximately cause any of CBI's losses."

5

declare bankruptcy after the malpractice was revealed (and thus that, when FoxMeyer made its offer, CBI still had some value) does not undermine the Bankruptcy Court's finding that the entire decline in CBI's value should be attributed to E&Y. It is well established that the mere lapse of time "between the negligent act and the injury will not prevent the former from being regarded as the proximate cause of the latter." Hoggard v. Otis Elevator Co., 52 Misc. 2d 704, 707-08, 276 N.Y.S.2d 681, 687 (Sup. Ct. 1966); see also Hassanein v. Avianca Airlines, 872 F. Supp. 1183, 1189 (E.D.N.Y. 1995); Restatement (Second) of Torts § 433 cmt. f (1977) ("[a] mere lapse of time, no matter how long is not sufficient to prevent [an actor's conduct] from being the legal cause of the other's harm.").

    C.  The Causation Argument

E&Y argues that on appeal this Court adopted a new theory of causation. According to E&Y, under this new theory the Bankruptcy Court should have excluded M. Brenner's 1993 sales from its calculation of CBI's 1993 sales.

The Bankruptcy Court held that E&Y's malpractice caused CBI's bankruptcy because, absent E&Y's malpractice, CBI's controlling shareholder (TCW) would have learned of CBI's officers' malfeasance, taken control of CBI, and sold it. The Bankruptcy Court found that, had E&Y not committed malpractice, TCW would have taken control of, and sold, CBI at either of two times: (1) at some point after E&Y completed its 1992 audit of CBI (E&Y finished the 1992 audit on August 6, 1992); or (2) at some point after E&Y completed its 1993 audit of CBI (E&Y finished the 1993 audit on October 26, 1993).

On appeal, this Court held that the Bankruptcy Court had not committed clear error by finding that a takeover and sale of CBI by TCW would have prevented CBI's bankruptcy. This Court pointed to evidence on the record that supported the Bankruptcy Court's ruling, including

6

testimony by Frank Pados, an officer of TCW, and Robert Rock, Plaintiff's expert. Pados and Rock testified that if TCW had known of the fraud taking place at CBI, TCW would have taken control of CBI, changed its management, ceased its acquisition strategy, focused on preserving CBI's value, and eventually sold the company.

In its motion for rehearing, E&Y argues that this Court adopted a new theory of causation on appeal. E&Y contends that this Court found that a takeover of CBI by TCW would have prevented CBI's bankruptcy, because it would have allowed TCW to place "additional controls" on CBI, i.e. change CBI's management and cease its acquisition strategy, in addition to later selling CBI. E&Y asserts that the Bankruptcy Court found only that TCW would have <u>sold</u> CBI, and <u>not</u> that TCW would have taken other steps prior to sale, such as changing CBI's management and strategy. E&Y then argues that under this Court's purportedly new theory of causation, the Bankruptcy Court erred by including M. Brenner's 1993 sales in CBI's 1993 sales, because if TCW had ceased CBI's acquisition strategy, CBI would not have acquired M. Brenner in April 1993.

E&Y's argument is without merit. First, the Court did not adopt a new theory of causation in the Opinion. The Bankruptcy Court found that a takeover and sale of CBI by TCW would have prevented CBI's bankruptcy. Pados and Rock testified about the steps that TCW would have taken as part of the takeover, including changing CBI's management and ceasing the acquisition strategy. The Court cited Pados' and Rock's testimony because it is part of the evidence in the record that supported the Bankruptcy Court's finding that the takeover and sale would have prevented the bankruptcy.

Second, the Bankruptcy Court did not err by including all of M. Brenner's 1993 sales in CBI's 1993 sales. The Bankruptcy Court found that TCW would have taken control of, and sold,

CBI sometime between August 1992 and late 1993. The Bankruptcy Court chose to value CBI as of April 30, 1993, the end of the 1993 fiscal year, because of "the availability of audited numbers for net sales, debt, preferred stock, and other balance sheet figures, none of which have ever been the subject of controversy." (Bankruptcy Court's Damages Opinion, dated October 23, 2000, at 3.). It was not clearly erroneous for the Bankruptcy Court to choose this date to value CBI. As of April 30, 1993, CBI had acquired M. Brenner, and thus it also was not clearly erroneous for the Bankruptcy Court to include M. Brenner's 1993 sales when calculating CBI's enterprise value as of that date.

II.     Motion to Stay Proceedings

E&Y moves to stay future proceedings in this action until the New York Court of Appeals has issued an opinion on a number of questions certified to it by the Second Circuit (the "Certified Questions"), which might affect the disposition of this action.

The Certified Questions involve the "adverse interest exception": an exception to the general rule that insiders' misconduct is imputed to their corporation. During the course of this litigation, the parties have disputed whether the adverse interest exception precludes CBI from bringing its claims against E&Y.[3] E&Y argues that CBI <u>has not</u> satisfied the adverse interest exception, and thus that (1) the fraud committed by CBI's employees can be imputed to CBI, and (2) CBI <u>does not</u> have standing to bring its claims against E&Y. CBI argues that it <u>has</u> satisfied the exception, and thus that (1) the fraud cannot be imputed to CBI, and (2) the company <u>does</u> have standing to pursue its claims against E&Y. In 2008, the Second Circuit ruled in favor of CBI with respect to the applicability of the adverse interest exception. <u>Bankr. Servs., Inc. v. Ernst & Young (In re CBI Holding Co.)</u>, 529 F.3d 432 (2d Cir. 2008) [hereinafter <u>CBI III</u>]. The

---

[3] The Court assumes familiarity with the parties' arguments, and with the decisions addressing those arguments issued by the Bankruptcy Court, this Court, and the Second Circuit.

8

Second Circuit held that the adverse interest exception applies in this case, and that CBI has standing to pursue its claims against E&Y.

A year after the Second Circuit's decision in CBI III, the Second Circuit issued a decision in another appeal, Kirschner v. KPMG LLP, Nos. 09-2020-cv (L), 09-2027-cv (CON), 2009 WL 4981206 (2009). In Kirschner, the Second Circuit referred the Certified Questions to the New York Court of Appeals. Certain of the Certified Questions relate to the Circuit's reasoning in CBI III. E&Y argues that there is a "substantial likelihood" that the New York Court of Appeals' response to the Certified Questions will "effectively overrule" CBI III, requiring the Second Circuit to reconsider its decision, and (1) to hold that CBI did not have standing to pursue its claims against E&Y, and (2) to enter judgment in favor of E&Y. E&Y asserts that it would thus be a waste of the Court's and parties' resources to continue with these proceedings. Accordingly, E&Y moves to stay the proceedings, pending the New York Court of Appeals' decision on the Certified Questions.

CBI opposes E&Y's motion to stay. CBI argues that the Court and parties have no basis for knowing how the Court of Appeals will decide the Certified Questions. CBI argues that Kirschner and CBI III are factually and legally distinct, and that it is not clear how the Second Circuit will apply a decision on the Certified Questions – which arose in the context of the Kirschner appeal – to CBI III. CBI states that even if the New York Court of Appeals issues a decision that E&Y believes favors its position, E&Y will have file a motion in the Second Circuit for reconsideration of CBI III, and that CBI will contest this motion. CBI points out that this case is almost ten years old. CBI argues that it would be inappropriate to further delay the final resolution of this action, particularly given the uncertainty regarding the impact of the Certified Questions on CBI III.

The Court declines to stay the action at this time. The Court cannot determine when the New York Court of Appeals is likely to rule on the Certified Questions, or whether its ruling will impact the continuing validity of CBI III. These uncertainties, along with the fact that this case has been in litigation for more than ten years, militates against a stay.

The Court DENIES E&Y's motion to stay, without prejudice to refile after the Court of Appeals issues its decision on the Certified Questions.

III. Conclusion

For the reasons stated above, the Court: (1) GRANTS in part and DENIES in part E&Y's motion for a rehearing; and (2) DENIES E&Y's motion for a stay, without prejudice.

SO ORDERED.

DATED: New York, New York
June 7, 2010

KIMBA M. WOOD
United States District Judge